IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

In re:                                  :
                                        :
ANA TORRES LOPEZ,                       :     Case No. 01-04801(GAC)
                                        :
        Debtor                          :     Chapter 13
_____ :
                                        :
ANA TORRES LOPEZ,                       :
                                        :
        Plaintiff                       :
                                        :
        v.                              :     Adv. No. 03-00093
                                        :
CONSEJO DE TITULARES DEL                :
CONDOMINIO CAROLINA COURT APART.,       :
LUIS RUBEN ORTIZ,                       :
MARIA DEL C. SALVA,                     :
ET ALS.,                                :
                                        :
        Defendants                      :
_____ :


**DECISION AND ORDER**

In the present case, an evidentiary hearing was held on
October 27, 2006, to determine whether the defendants Consejo
Titulares del Condominio Carolina Court Apartments ("Consejo"),
Maria del C. Salva ("Salva"), Luis Ruben Ortiz ("Ortiz"), *et als*.
(collectively "defendants"), willfully violated the automatic stay,
entitling the debtor Ana Torres Lopez ("Torres") to damages. The
first issue pending before this Court is a motion to dismiss,
presented after the conclusion of the evidentiary hearing by the
defendants pursuant to Federal Rules of Civil Procedure 12(b)(6),
12(b)(7) and 19. Once the first issue is resolved, the Court will

1

consider the original issue pending, which was whether the defendants willfully violated the automatic stay by sending Torres invoices with pending amounts owed, a collection letter advising that water, electricity and phone services would be discontinued if payment was not received and the posting of notices on a communal bulletin board. As per Decision and Order entered on May 17, 2006, if Torres proved these actions, they would constitute a violation of the automatic stay and Torres would be entitled to an award of damages.

I. <u>Procedural History</u>

On June 25, 2003, Torres filed the instant adversary proceeding to determine whether the defendants willfully violated the automatic stay by trying to collect a pre-petition debt for condominium maintenance fees and alleged that under 11 U.S.C. § 362(h) she was entitled to damages in the amount of $350,000.00 (Docket #1). Defendants denied the allegations (Docket #10). On September 14, 2004, Torres filed a motion requesting partial summary judgment (Docket #22), enclosing thirteen exhibits. In reply, on October 7, 2004, defendants filed an opposition to Torres' motion requesting partial summary judgment (Docket #29).

On May 17, 2006, the Court entered a Decision and Order denying Torres's motion requesting partial summary judgment and scheduling an evidentiary hearing for July 7, 2006 (Docket #42). The Court denied Torres' motion for partial summary judgment because genuine issues of material fact were in dispute. Torres

contended that defendants posted notices and sent her invoices and the defendants denied it on an unsworn statement attached to their opposition. The Court scheduled an evidentiary hearing to determine if the defendants, in fact, sent Torres monthly invoices, collection letters or posted notices related to her debt. The Court indicated that it would consider her entitlement to damages if the violation was proven. The evidentiary hearing was rescheduled, and finally held on October 27, 2006.

At the evidentiary hearing, the parties presented the testimony of Torres and Zulma Albadadejo ("Albaladejo")(for the plaintiff) and Ortiz (for the defendants). Torres introduced six exhibits as evidence and the defendants introduced two exhibits. After the evidence was presented and the documentary evidence partially admitted, defendants' sought to have the matter dismissed based on their argument that Torres had not proven that the defendants violated the automatic stay, but that it was done by a third person who was not included as a party in this proceeding. The Court ordered both parties to file memorandums of law and the matter was taken under advisement. The Court indicated that once the motion to dismiss was resolved, it would decide if any damages should be awarded, and the amounts based on the evidence admitted at the hearing. On December 15, 2006, Torres and the defendants both filed their memorandums of law (Docket #59 and #62).

II. <u>Legal Arguments</u>

    A. <u>Torres</u>

In the present case, Torres filed a petition under Chapter 13 of the Bankruptcy Code on April 25, 2001. Torres asserts that the Consejo knew of this from a letter sent to Salva on June 4, 2001. After the filing of the bankruptcy petition, Torres contends that the Consejo sent her invoices with pending amounts owed and a collection letter advising that water, electricity and phone services would be discontinued if payment was not received. Torres also contends that the defendants posted notices on the communal bulletin board mentioning Torres' Chapter 13 bankruptcy.

Torres asserts that all the elements needed to establish a violation of stay have been met: (i) a bankruptcy petition was filed; (ii) Torres is an individual under the automatic stay provision; (iii) the defendants received notice of the petition; (iv) a violation occurred; (v) the violation was committed willfully; and (vi) Torres suffered damages.

B. Defendants

The defendants contend that this adversary case should be dismissed against Salva and Ortiz, in their personal capacity, since Torres failed to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). They also contend that the case should be dismissed in its entirety, since Torres failed to join a necessary and indispensable party under Federal Rules of Civil Procedure 12(b)(7) and 19.

The defendants maintain that the uncontested facts are that: the Consejo was not a named creditor in the original bankruptcy

petition; Torres has lived at the Carolina Court Apartments for approximately ten years; a list of residents which were late in their maintenance fee payments was posted regularly throughout the condominium in accordance with the condominium's rules and regulations; the bankruptcy petition was filed on April 25, 2001 and the Consejo de Titulares was notified on June 2001; Salva was president of the Consejo from March 2001 to February 2002; Ortiz was the president of the Consejo from February, 2002 to November 2002; since November 2002, Salva has been president and has remained president until the present time; since 2001 ADCON, Corp. ("ADCON"), has been the hired administrator of the Condominio Carolina Court Apartments and all matters related to the collection of maintenance fees have been dealt with directly by ADCON; ADCON was never included as a party in the present claim.

The defendants contend that with this undisputed set of facts, Salva and Ortiz cannot be held responsible, because there were no allegations made against them in their individual capacity; only acts or omissions that took place during their respective terms as presidents of the Consejo. The defendants cite local law contending that the condominium association has the legal personality and it answers for its members to third parties, with the members of the Consejo only answering subsidiarily and only with respect to their own apartment unit. They contend that no allegations were made against Salva or Ortiz in the complaint, that their acts and omissions were only as presidents and thus, they are not

responsible in their individual capacity.

Secondly, the defendants contend that Torres failed to join an indispensable party, the Administrator of the Condominium Carolina Court Apartment, ADCON. They assert that according to the P.R. Horizontal Law, the condominium association can delegate to an administrator its duties and responsibilities. The defendants assert that the Consejo contracted the services of ADCON to assume the role of administrator of said condominium and that ADCON is responsible for collecting all maintenance fees payments from the residents of the condominium. They explained that this was notified to Torres in the pre-trial report filed on September 14, 2004 and that she failed to amend the complaint. They also assert that the letters sent to plaintiff were only statements, not collection notices, and that "the posting of the list was done in compliance with the condominium's rules and regulations." Finally, the defendants contend that statements and the posting of the list are part of ADCON's functions as administrator.

Finally, the defendants allege that the statements and list presented as documentary evidence by Torres during the evidentiary hearing were not properly authenticated and that they were admitted to prove that Torres received the statements and posted, but not for the veracity of the same. Furthermore, the defendants assert that any ruling against the Consejo will affect all apartments. Thus, suing the Consejo Torres sued herself.

III. <u>Discussion</u>

There are two matters pending before the Court, the first is the motion to dismiss presented by the defendants at the conclusion of the evidentiary hearing pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7) and Rule 19, made applicable by Federal Rules of Bankruptcy Procedure 7012(b)(6), 7012(b)(7) and 7019. The second matter pending is the determination of whether Torres proved that the defendants violated the automatic stay and if she is entitled to an award of damages.

A. <u>Federal Rule of Bankruptcy Procedure 7012(b)(6)</u>

Federal Rule of Bankruptcy Procedure 7012(b)(6) is a defense based on "failure to state a claim upon which relief can be granted." Fed. R. Bankr. P. 7012(b)(6).

The Puerto Rico Horizontal Property Law ("Horizontal Property Law") foresees that the president or acting members of a condominium association may violate other member's rights and be held monetarily responsible for it. For this reason, the condominium association protects the acting members. The law provides, in its pertinent part:

> The Condominium Association shall have its own legal personality and shall answer for its responsibilities to third parties subsidiarily, and only with their own apartment unit.
> ...
>
> With the exception of the positions of Director, President, Treasurer, or Secretary, which shall of necessity belong to the Condominium Association, the representative of a unit owner who is able to present stated evidence issued by same, subscribed before a notary, may be elected to fill the remaining

positions. <u>The directors shall be personally accountable for their actions while acting as such, should they incur a crime, fraud or gross negligence. In any other case in which monetary responsibility is imposed on an owner for his/her actions as director, the Condominium Owners Association shall cover said expenses.</u>

P.R. Laws Ann. tit. 31, §1293b(a)(1).

In the present case, the defendants contend that no allegations were made against Salva or Ortiz in their individual capacity and that their actions were done in their official capacity as members of the Consejo. Thus, they request that the complaint be dismiss against them in their individual capacity.

If Salva's or Ortiz's acts violated the automatic stay as presidents of the Consejo, Torres could recover from them personally, if they committed a crime, fraud or gross negligence. The actions alleged by Torres against Salva or Ortiz do not involve a crime, fraud or gloss negligence. If Salva or Ortiz violated the automatic stay as part of their duties, and monetary responsibility is imposed, the Consejo should cover such expenses. The Court concludes that if Torres proved that Salva or Ortiz violated the automatic stay, she will be able to obtain relief from the Consejo. For the reasons set forth, the motion to dismiss against Salva or Ortiz in their individual capacity for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(6), will be, granted.

B. <u>Federal Rules of Bankruptcy Procedure 7012(b)(7) and 7019</u>

The defendants also raise the defense that Torres failed to

join a party that is needed for the just determination of the present adversary proceeding pursuant to Rule 7012(b)(7) and 7019(a). Federal Rule of Bankruptcy Procedure 7019(a) states:

> **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties,

Fed. R. Bankr. P. 7019(a).

The Horizontal Property Law states that the condominium association "constitutes the supreme authority over the administration of the building submitted to the horizontal property regime." P.R. Laws Ann. tit. 31, § 1293b. It is constituted by all the unit owners and it has its own legal personality and shall answer for its responsibilities. Id. The condominium association can hire an administrator, who may be a person that is not a member of the community of unit owners. P.R. Laws Ann. tit. 31, § 1293b(a)(2).

On the other hand, it is the Board of Directors that "constitutes the executive organ of the community of co-owners." P.R. Laws Ann. tit. 31, § 1293b-4. The Board of Directors is composed of the president, the secretary and the treasurer. P.R. Laws Ann. tit. 31 § 1293b. The Horizontal Property Law outlines the duties and powers of the Board of Directors, among its duties:

> (a) <u>To take care of everything relating to the good government, administration surveillance</u>

and operation of the regime and especially in regard to the things and elements of common use and the general services, and to make, for such purposes, the proper warnings and admonitions to the co-owners.

...

(c) To direct the financing matters concerning the collection and payments and to keep a book with a detailed account in chronological order, of the receipts and expenditures affecting the property and its administration and specifying the maintenance and repair expenses of the common elements, and to have available for examination by all the co-owners, at convenient hours and days that shall be set for general knowledge, said book as well as the vouchers accrediting the entries made.

(d) To collect from the co-owners the amounts they must contribute for the common expenses and to make all other necessary collections and payments, issuing the corresponding receipts and checks.

...

(f) To submit to the approval of the Association a balance sheet corresponding to the closing year. The balance sheet shall indicate the total amount received from quotas for common expenses and from other sources, an itemized breakdown of all the expenses incurred, the compensations received by the managing agent, if any, receivable accounts for common expenses and for other reasons, balance for the following year, and the amount available as reserve fund. The Director or Board of Directors shall be responsible for having a copy of the balance sheet sent to each co-owner at least fifteen (15) days before the date of the regular annual meeting.

...

(k) Relieve the Administrator of his/her duties for just cause. Just cause shall mean culpable negligence in the discharge of

<u>duties, dishonesty, or the breach of the codes of good conduct set forth in the Regulations of the condominium, or noncompliance with the duties set forth in the contract.</u> The Director or the Board of Directors shall convene the Condominium Association no later than thirty (30) days after the relief of duties to inform said action, for same to act as he/she deems convenient. (l) Any other powers assigned by the regulations or by the Condominium Association.

P.R. Laws Ann. tit. 31 § 1293b-4.

In the present case, the defendants assert that the Consejo contracted the services of ADCON to assume the role of the administrator of said condominium and that ADCON is the one responsible for collecting all maintenance fee payments from the residents of the condominium. Thus, they assert that the complaint should be dismissed in its entirety under Fed. R. Bankr. P. 7012(b)(7) and 7019.

They defendants correctly assert that ADCON is not a party in the present adversary proceeding. According to both parties, Consejo subcontracted ADCON to collect and administer the maintenance fees pursuant to their bylaws and the Horizontal Property Law. Although, ADCON was hired by the Consejo to administer and collect the maintenance fees, the Consejo "constitutes the supreme authority over the administration of the building." ADCON may be held responsible for violating the automatic stay but, the fact that ADCON is not a party in the present adversary proceeding does not preclude Torres from recovering damages from the Consejo, if the Board of Directors or

ADCON, acting on its behalf, violated the automatic stay.

C. Actions as Agent

Sections 362(a)(4) and (a)(5) of the Bankruptcy Code provide that:

> "except as provided in subsection (b) of this section, a petition ... operates as a stay, applicable to *all entities,* of ... any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."(emphasis added)

11 U.S.C. §§ 362(a)(6). The statute makes the automatic stay applicable to all entities. In re Michaud, __ B.R.__, 2007 WL 135902 at p. 3 (Bankr. D.N.H. 2007). "Accordingly, acts undertaken as an agent of a creditor by any entity constitute violations by that entity." Id. Also, "[i]f the actions of an agent of a creditor violate the stay and were undertaken at the direction or under the control of a creditor, such creditor may be liable for violating the stay." Id. See also, In re McCormack, 203 B.R. 521 (Bankr. D.N.H. 1996). On the other hand, if an agent violated the automatic stay but the creditor did not know of the agent's violation of the stay or repudiated the agent's actions once they learned of them, then the creditor will not be held responsible. In re Joslyn, 75 B.R. 590 (Bankr. D.N.H. 1987).

In the present case, according to Torres' testimony and Ortiz's testimony, ADCON is an entity which the Consejo hired to collect the maintenance fees and to administer such money. ADCON's actions are undertaken as an administrative agent of the Consejo, and they are done for the benefit of the Consejo and pursuant to

12

the instructions of the Consejo. As such, this Court concludes that ADCON is considered to be an agent of the Consejo and thus, no indispensable party is missing because Torres can recover damages from the Consejo if its agent violated the automatic stay while acting on its behalf and the Consejo did not prevent it.

The Court concludes Torres' complaint for violation of the automatic stay was properly filed against the Consejo, Salva or Ortiz, since the alleged violations were committed by the Consejo, through its members, or by a third party for the benefit of the Consejo, which is the only creditor of the maintenance fees owed by Torres pre-petition. Thus, the motion to dismiss for failure to include an indispensable party pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(7) and 7019, will be, denied.

D. The Automatic Stay

The automatic stay provision is one of the fundamental debtor protections in the Bankruptcy Code. It gives the debtor a "breathing spell" from creditors and it stops all collection efforts, all harassment, and all foreclosure actions. H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 340-342 (1977); S. Rep. No.989, 95th Cong., 2d Sess. 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296-97. "It allows the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy." Id.

The automatic stay provision specifically outlines those acts which are prohibited, including "any act to collect, assess, or

recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

When a creditor willfully acts after the filing of a petition under 11 U.S.C. § 301, and without authorization from the Court, to collect a pre-petition claim against the debtor and the action causes the debtor injury, the debtor may recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, punitive damages. 11 U.S.C. § 362(h). The Bankruptcy Code does not define the word "willful," however, the United States Court of Appeals for the First Circuit has held that a creditor willfully violates the automatic stay if it has notice of the automatic stay, and the act or acts of the defendant were intentional. <u>Fleet Mortgage v. Kaneb</u>, 196 F.3d 265 (1st Cir. 1999).

In the present case, Torres filed a petition under Chapter 13 of the Bankruptcy Code on April 25, 2001. In a letter dated June 4, 2001, Torres notified the Consejo and Salva, president of the Consejo, of the filing of her petition in bankruptcy (Plaintiff's Exhibit 1). Torres testified that she sent the letter to the office and that it was posted as being received on June 5, 2001. (Plaintiff's Exhibit 1 and Docket #53, Transcript page 21, lines 10-11). In the defendants' memorandum of law, this is one of the listed uncontested facts (Docket #64, p.4). Thus, the first requisite of the violation of the automatic stay is fulfilled because Torres gave notice to the Consejo that she had filed a petition for bankruptcy and they received such notice.

14

1. <u>Monthly Invoices/Collection Letter</u>

Bankruptcy courts have held that sending statements or monthly invoices with pre-petition amounts to debtors, when the information is not needed by the debtor, could be understood to be collection efforts by creditors. See <u>In re Drapper</u>, 237 B.R. 502 (Bank, M.D.Fla. 1999) and <u>In re Connor</u>, 366 B.R. 133 (Bankr. D. Hawaii 2007).

In the present case, Torres asserts that the Consejo was sending her invoices with pre-petition amounts owed for maintenance fees. Torres offered into evidence eighteen monthly invoices between the dates of January 2, 2002 and June 7, 2004 (Plaintiff's Exhibit 2). The remittance address, in the top left of the statements is: "Condominio Carolina Court Apt. Mailbox #67, Calle Infante, Carolina PR. 09982." The statement has a blank portion stating "Amount Enclosed $_____."

Torres in her testimony explained that the invoices had the pre-petition amount owed as maintenance fees. (Docket #53, Transcript page 25, lines 6-10). She was asked who sent her the invoices and she replied that the Consejo sent them every month and that this is the document that Consejo usually sends to show if there are maintenance fees owed. (Docket #53, Transcript page 26, lines 6-8 and page 27, lines 18-19).

When Torres was asked in the cross-examination, where in the statement did it indicate who sent them, she said that the top left part indicated the sender. She also said that "it was sent by

mailbox #67 that belongs to the Consejo de Titulares Carolina Court." (Docket #53, Transcript page 27, lines 11-13). On the other hand, Ortiz contradicted Torres' testimony, by explaining that the statements were always prepared by ADCON because it was the one that knew and had access to that information and not the Consejo. (Docket #53, Transcript page 132, lines 13-15).

The Court gives credibility to Torres' testimony because Ortiz failed to explain why, if the statements were in fact sent by ADCON, the remittance address did not mention such entity nor did Ortiz rebut the fact that mailbox #67 does not belong to the Consejo. The Court concludes that statements were sent to Torres with the pre-petition amount owed as shown in the plaintiff's exhibit, that the remittance address is mailbox #67, as per the exhibit, and that this was Consejo's mailbox, as per Torres' testimony.

According to Torres's testimony, she understood that if she did not pay the whole amount owed, her utilities could be cut pursuant to the condominium by-laws. The Court concludes that the defendants sent Torres monthly invoices with pending pre-petition amounts owed and that the defendants were trying to collect not only the amount due for a particular month, but also the prepetition amount due as well. Furthermore, all these acts committed by the Consejo were intentional, because they where in full knowledge of Torres' petition for bankruptcy and thus, this Court concludes that the Consejo violated the automatic stay.

Secondly, Torres presented one letter that she received from R. Maldonado, administrator of the Condominio Carolina Court Apartments, advising her:

> if the payment in its totality is not received on or before the 27th of March 2003, we shall proceed with the suspension of the drinking water, electricity, telephone services, and any other similar service when the supply of the latter arrives through installations constituting general common elements of the real property, without any further warning and notice of any kind whatsoever (Docket #53, Plaintiff's Exhibit 4).

This letter is clearly a collection and intimidation letter that goes against the plain meaning of the protection given to debtors by the automatic stay. This letter was sent by the administrator from ADCON. The Consejo should have notified ADCON that Torres had filed for bankruptcy and stopped any letters attempting to coerce Torres to pay the pre-petition maintenance fees. Thus, the Consejo will be held liable for not preventing the acts committed by ADCON on its behalf, which resulted in a clear violation of stay.

2. <u>Posting notices related to a debt</u>

In <u>In re Crudup</u>, 287 B.R. 358 (Bankr. E.D.N.C., 2002) the Court found a violation of the automatic stay when a creditor addressed a letter to debtor's in-laws in an effort to collect debt. <u>In re Crudup</u>, 287 B.R. at 362. The Court in <u>Crudup</u> cited <u>In re Andrus</u>, 189 B.R. 413 (N.D.Ill. 1995), and made an analogy between a violation of stay and a violation of the discharge injunction. In <u>In re Andrus</u>,

189 B.R. at 415, the creditor posted two signs: the first sign read "Gene Andrus, Where's my money?" and the second "Gene Andrus went bankrupt! He didn't pay his bills. He is a deadbeat! This is a public service announcement." The Court held that:

> creditor engaged in a pattern of harassing conduct after the debtors' discharge was granted, including posting signs near the debtors' house, leaving messages on the debtors' answering machine threatening to ruin their reputation in the community unless the debt was repaid, approaching the debtors, and shouting at them. The bankruptcy court found that the creditor violated the discharge injunction by engaging in a course of conduct intended to force the payment of a discharged debt, and ordered the creditor to pay remedial and compensatory damages as well as to remove the sign.

Similarly, in In re Stonegate Security Services, Ltd., 56 B.R. 1014, 1018-1020 (N.D.Ill.1986) a creditor's actions in posting a sign publicly accosting a debtor for non payment of a discharged debt and making harassing telephone phone calls violated the automatic stay and warranted the imposition of sanctions.

Torres contends that the Consejo also violated the stay by posting a communal notice with a list of the apartments with arrears of three months or more as of June 11, 2002 (Plaintiff's Exhibit 3), in which the name of the debtor appeared, the amount owed and the notation "Chapter 13." Torres's testimony was corroborated by Albaladejo, who testified that she had lived in the condominium for three years and that she saw Ortiz post the notice. (Docket #53, Transcript page 114, lines 1-13). Albaladejo also testified that she told Torres that her rights were being violated.

(Docket #53, Transcript page 107, lines 12-13).

Ortiz asserts that the Consejo did not draft nor prepare any notice posted on the condominium walls which gave public notice of Torres' late payment of maintenance fees and of her bankruptcy filing. (Docket #53, Transcript page 132, lines 11-20). Ortiz also testified that ADCON was in charge of posting the notices and that the posting by ADCON was in compliance with the by-laws of the condominium association. (Defendants' Exhibit A) (Docket #53, Transcript page 131, lines 19-25).

Torres and Albaladejo testified that Ortiz posted the communal notices and Ortiz denied it. The Court gives credibility to the testimony of Torres and Albaladejo. Thus, the Court concludes that Ortiz, acting as president of the Consejo, posted the notice with the pre-petition amount owed and the notation of the Chapter 13. This act, one of a few others committed on the Consejo's behalf, was intentional because it was done with full knowledge of Torres' petition for bankruptcy and thus, the Consejo violated the automatic stay.

3. Actions Complying With Non-bankruptcy Law

The Puerto Rico Horizontal Law lists the duties and the responsibilities of a condominium association, one of its responsibilities is to:

> (i) Order the suspension of services received through, or by means of, the general common elements, including water, gas, electricity, telephone, and/or any other similar utility services, to unit owners in default, who owe two (2) or more consecutive monthly fee

> payments, for not paying their maintenance
> fees or their proportional part of the common
> insurance, gratuitously enjoy the elements
> whose maintenance they do not contribute
> toward as they should. However, in view of
> noncompliance with the first installment, the
> Board of Directors or the Director shall send
> a notification to inform the intent to suspend
> the services on the due date of the second
> consecutive unpaid installment, pursuant to
> the procedure established by the Condominium
> Association and set forth in the regulations.
> In the case of an apportionment whose
> installments have not yet been incorporated in
> the monthly maintenance fees, suspension of
> the services may be carried out after two (2)
> months elapse from the due date established
> for the payment of the final installment, and
> as in the case of nonpayment of the
> maintenance fees, such services shall not be
> reinstated until the total amount due is paid.
> Prior to the interruption of the
> aforementioned services, the Director or the
> Board of Directors shall ensure that in so
> doing the health or the life of the affected
> party are not affected.(emphasis ours)

Laws Ann. tit. 31, § 1293b(i).

The Bankruptcy Code with few exceptions, supersedes any law or regulation of any state or any corporate or condominium bylaw. In the case of Pratt v. General Motors, a creditor who did not act in bad faith nor contrary to state law was held to have violated the discharge injunction because its actions were objectively coercive. Pratt v General Motors Acceptance Corp., 462 F.3d 14, 19-20 (1st Cir. 2006). The First Circuit Court of Appeals held that:

> even legitimate state-law rights exercised in
> a coercive manner might impinge upon the
> important federal interest served by the
> discharge injunction, which is to ensure that
> debtors receive a "fresh start" and are not
> unfairly coerced into repaying discharged

prepetition debts.

<u>Id</u> at 19.

In the present case, the defendants contend that the letters sent to Torres were only statements, not collection notices, and that "the posting of the list was done in compliance with the condominium's rules and regulations." This, argument has no merit. The protection of the automatic stay is the principal protection given to debtors by the Bankruptcy Code and the condominium bylaws do not supersede it. Thus, the Court concludes that the Consejo, through it members and through ADCON, violated the automatic stay by sending Torres invoices with pending amounts, by sending a coercive letter advising her that the electricity and water would be cut if they did not receive the payments, and by posting a communal notice with the notation "Chapter 13." Thus, pursuant to 362(h) Torres is entitled to damages.

IV. <u>Entitlement as to Damages</u>

When a creditor willfully acts after the filing of a petition under 11 U.S.C. § 301, and without authorization from the Court, to collect a pre-petition claim against the debtor and the action causes the debtor injury, the debtor may recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, punitive damages. 11 U.S.C. § 362(h). The burden is on the debtor to prove by a preponderance of the evidence that she suffered damages as a result of the stay violation. <u>In re Heghmann</u>, 316 B.R. at 403-404 (1st Cir. B.A.P. 2004).

A. <u>Actual Damages</u>

Under § 362(h), Torres is entitled to actual damages for the Consejos's violation of the automatic stay. In the case of <u>In re Heghmann</u>, the Bankruptcy Appellate Panel for the First Circuit held that actual damages under § 362(h), should be awarded "only if there is concrete evidence supporting the award of a definite amount." <u>In re Heghmann</u>, 316 B.R. at 404 (1st Cir. B.A.P. 2004). Notwithstanding, in the case of <u>Fleet Mortgage Group v. Kaneb,</u> 196 F.3d 265 (1st Cir. 1999), the First Circuit Court of Appeals upheld an award for emotional distress as within the "actual damages" recoverable for violation of the automatic stay under 11 U.S.C. § 362(h). In the case of <u>In re Rivera Torres</u>, the First Circuit declined to resolve whether damages for emotional distress were actual damages. <u>In re Rivera Torres,</u> 432 F.3d 20, 26 n.6 (1st Cir. 2005).

In general bankruptcy courts have awarded emotional distress damages as coming under the purview of actual damages recoverable under § 105. <u>See</u> e.g., <u>In re Curtis,</u> 322 B.R. 470, 486 (Bankr. D.Mass. 2005) (awarding "compensatory damages" for stress, weight loss, vomiting, and depression); <u>In re Barry</u>, 330 B.R. 28, 38 (Bankr. D.Mass. 2005) (awarding "emotional distress damages" for violation of discharge injunction). <u>See also</u> <u>In re Manzanares,</u> 345 B.R. 773 (Bankr. S.D.Fla. 2006); <u>In re Meyers,</u> 344 B.R. 61 (Bankr. E.D.Pa. 2006); <u>In re Feldmeier,</u> 335 B.R. 807 (Bankr. D.Or. 2005).

Torres testified that she has suffered as a consequence of

Consejo's violation of the automatic stay. She testified that she felt humiliated when she was not allowed to vote at the residents' meeting and that she felt humiliated when they posted the communal notice with the notation "Chapter 13." As a reply to the letter sent by Maldonado (Plaintiff's Exhibit #4), she wrote a letter to Ms. Salva, indicating that she was again sending the evidence of her bankruptcy "hoping that this situation be clarified once and for all so that the threats that perturb my peace do not continue and go against the rights the law gives me." (Plaintiff's Exhibit 6).

Defendants alleged that Torres had ongoing problems that affected her emotionally that had no relation with the Consejo's violation of the automatic stay. However, the Court believes that Torres did in fact undergo emotional distress and suffering as a direct result of the Consejos' multiple violations of the automatic stay. Thus, we will award Torres the amount of $2,500 as actual damages for her mental/emotional distress and suffering plus, attorney's fees and costs.

2. <u>Punitive Damages</u>

Pursuant to § 362(h), individuals injured by willful violations of the automatic stay are entitled to recover punitive damages in "appropriate circumstances." <u>See</u> 11 U.S.C. § 362(h). In the case of <u>In re Heghmann</u>, the Bankruptcy Appellate Panel for the First Circuit, stated that because the Bankruptcy Code does not delineate what this means, it is left to the sound discretion of the bankruptcy courts. <u>In re Heghmann</u>, 316 B.R. at 405 (1st Cir. B.A.P.

23

2004). The court held that punitive damages usually require more than a mere willful violation of the automatic stay and outlined some factors to take into consideration, including: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. Id at 405.

The Bankruptcy Appellate Panel also explained that courts often have limited the imposition of punitive damages to cases where there is "'egregious, intentional misconduct.'" In re Heghmann, 316 B.R. at 405 (citing Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir.1991)).

In the case of In re Ocasio, 272 B.R. at 825 ( B.A.P. 1st Cir. 2002), the Bankruptcy Appellate Panel explained that:

> '[t]he primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior; ... [and] ... the prospect of such change is relevant to the amount of punitive damages to be awarded.'

Id. 272 B.R. at 825 (citing In re Shade, 261 B.R. 213, 216 (Bankr. C.D.Ill. 2001)).

In the present case, various violations of the automatic stay occurred. But, when examining them, the Court does not find that "egregious, intentional misconduct" was present or displayed by the Consejo, through it members or by ADCON. In analyzing the factors considered by other courts to impose punitive damages, we find that they are not present in this case. The Court finds that the

Consejos' actions were not egregious because it is not a sophisticated creditor and the violations committed were more due to the lack of knowledge about the bankruptcy law rather than severe creditor's conduct. Secondly, the Court has no knowledge of the creditor's ability to pay damages, because it is a condominium association and because no evidence was presented by Torres. Thirdly, the Court finds that the Consejo was moved to act in order to comply with their by-laws, which require the collection of the maintenance fees. Thus, the Court will not award punitive damages.

V.    CONCLUSION

Torres has proven that the Consejo, through its members and its administrative agent, violated the automatic stay by sending Torres invoices with pending amounts, by sending a coercive letter advising her that the electricity and water would be cut if they did not receive the payments, and by posting a communal notice with the notation "Chapter 13." Thus, pursuant to 362(h) Torres is entitled to damages. However, this Court believes that Torres suffered damages in the form of emotional suffering limited to the amount of $2,500.00. Finally, an award of attorney's fees and costs will be granted.

ORDER

WHEREFORE, IT IS ORDERED that the Motion to Dismiss the complaint against Maria del C. Salva and Ruben Ortiz in their individual capacity for failure to state a claim for which relief

can be granted pursuant to Fed. R. Bankr. P. 7012(b)(6), presented by the defendants is hereby, GRANTED.

IT ALSO ORDERED that the Motion to Dismiss the complaint against the Consejo de Titulares failure to join a indispensable party pursuant to Fed. R. Bankr. P. 7012(b)(7) and 7019, requested at the evidentiary hearing by the defendants, is hereby, DENIED.

IT ALSO ORDERED that the Motion for Partial Summary Judgment filed by Torres is hereby, GRANTED IN PART.

It is ORDERED and ADJUDGED that the Consejo de Titulares will pay Torres damages for emotional suffering in the amount of $2,500, plus cost and attorney's fees. An application for compensation should be properly submitted in twenty (20) days.

SO ORDERED.

San Juan, Puerto Rico, this 6th day of September 2007.

/s Gerardo A. Carlo-Altieri

_____
GERARDO A. CARLO-ALTIERI
Chief, U.S. Bankruptcy Judge